896 F.Supp. 1183 (1995)
Carolyn SMITH and Karole Miele, Plaintiffs,
v.
UNITED STATES of America; Goodwill Industries-Suncoast, Incorporated; William Procknow; and Teddy Wilson, Defendants.
No. 93-940-CIV-ORL-18.
United States District Court, M.D. Florida, Orlando Division.
August 17, 1995.
*1184 J. Edwin Mills, Law Office of J. Edwin Mills, Orlando, FL, for Carolyn Smith and Karole Miele.
Kendell W. Wherry, U.S. Attorney's Office, M.D. Florida, Orlando, FL, for U.S.
*1185 James Robert Freeman, Scott Patrick Distasio, Shear, Newman, Hahn & Rosenkranz, P.A., Tampa, FL, for Goodwill Industries-Suncoast, Inc. and William Procknow.
Teddy Wilson, Orlando, FL, pro se.

ORDER
G. KENDALL SHARP, District Judge.
This case is before the court on Defendant William Procknow's (Procknow's) and Goodwill Industries-Suncoast, Inc.'s (Goodwill's) motions for summary judgment (Docs. 43, 46). Goodwill runs halfway houses for the United States Bureau of Prisons, under a contractual agreement with the United States Government. Plaintiffs Carolyn Smith (Smith) and Karole Miele (Miele) were inmates at Goodwill's correctional facility in Maitland in 1993, where Procknow served as facility manager. Smith and Miele allege that Defendants violated their rights protected by the Fifth and Eighth Amendments because they were sexually harassed by Defendant Teddy Wilson, an employee at the facility. The court concludes that Plaintiffs' claims against Goodwill and Procknow are without merit as a matter of law, and that Defendants are entitled to summary judgment.

I. Facts
Plaintiffs Smith and Miele were prisoners in the federal prison system, and both were transferred to a halfway house in Maitland, Florida, near the end of their prison terms. Goodwill, a private non-profit organization, operates the halfway house. Smith arrived at the Goodwill facility on July 7, 1993, and stayed there until October 1993. Miele arrived on June 1, 1993, and left on August 16, 1993. Miele also had spent time at the Goodwill halfway house in 1986. Goodwill hired Teddy Wilson (Wilson) as a corrections technician at the Maitland facility on February 13, 1993, and Wilson worked at the facility until August 2, 1993. Wilson performed all of the acts alleged to be the basis for constitutional violations in Smith and Miele's complaint. For all times relevant to this case, Procknow served as facility manager of the Maitland facility, responsible for its daily operation. Procknow reported to Paul Norris (Norris), who was Director of Community Relations for Goodwill and was responsible for administering Goodwill's correctional operations in Florida and Georgia.
While residing at the Goodwill halfway house, inmates are free to leave the facility during daylight hours to work. Inmates also may gain privileges to leave the facility during non-work hours and to sleep away from the facility. Inmates can move around the grounds during non-curfew hours. During curfew hours they are required to stay in their rooms. However, never are inmates detained, locked in their rooms, or physically restrained in any way on facility grounds. If an inmate leaves the facility without permission, Goodwill's only recourse is to report the escapee to the Bureau of Prisons.
As part of his job, Goodwill required Wilson to perform room checks and head counts of all inmates at least four times per night while they were sleeping, to insure that all of them were present. The halfway house is a converted hotel, and the rooms are identical to hotel rooms. On or about June 3, 1993, Wilson entered a room assigned to Miele and two other female inmates. One of the women was sleeping on the floor, and Wilson entered the room. According to Miele's deposition testimony, Wilson then lingered over Miele and another woman with his flashlight, and then tried to wake the other woman before leaving. Miele reported this incident to Procknow, but she did not claim that Wilson had been sexually harassing them. Wilson denied that he had conducted himself improperly, but Procknow investigated the complaint and counseled Wilson on the proper way to perform room checks and the importance of avoiding even the impression of improper conduct.
On August 2, 1993, Procknow received a written complaint from Smith, alleging that Wilson had engaged in sexually offensive conduct and sexual harassment on July 31 and August 1. Wilson allegedly asked Smith to perform various sexual acts with him in exchange for money, and masturbated in Smith's room in her presence. Procknow immediately suspended Wilson and conducted an investigation. Procknow discovered that other inmates claimed to have suffered *1186 from harassment and other sexually offensive conduct by Wilson since July 3. The investigation following the August 2 complaint provided Procknow with his first knowledge of Wilson's alleged conduct. Procknow fired Wilson immediately after the investigation, and Wilson did not work at the facility again.

II. Legal Discussion
Plaintiffs have filed this action alleging that Defendants have violated their rights protected by the Fifth and the Eighth Amendments to the Constitution, and have brought this action as a constitutional tort. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Neither the Supreme Court nor the Eleventh Circuit has ruled definitively as to whether a plaintiff may bring a Bivens action against a private party. See Morast v. Lance, 807 F.2d 926, 930 n. 5 (11th Cir.1987). For purposes of this motion, the court will assume that Plaintiffs may bring this action against Defendants. In Plaintiffs' first count, they allege that Defendants violated their rights to equal protection guaranteed by the due process clause of the Fifth Amendment. In their second count, Smith and Miele contend that Defendants violated their right to be free from cruel and unusual punishment, protected by the Eighth Amendment. Procknow and Goodwill each have filed motions for summary judgment as to both counts. After establishing the standards for summary judgment and determining for whose acts Goodwill should be liable, the court will evaluate these claims individually.

A. Summary Judgment Standards

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S.Ct. at 2510.
The moving party bears the burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513-14; see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. Celotex, 477 U.S. at 323-24, 106 S.Ct. at 2553; Fed. R.Civ.P. 56(c).
"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249, 106 S.Ct. at 2510 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

B. Goodwill's Final Policy Maker

Goodwill cannot be held liable for the constitutional violations of its employees under the doctrine of respondeat superior. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an *1187 entity is responsible." Monell v. Department of Social Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). The Eleventh Circuit has extended these requirements for employer liability in civil rights actions against private corporations. Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992).
In deciding when municipalities or corporations are liable under this theory, the Eleventh Circuit has fashioned two alternate routes. First, "a city [or corporation] is responsible for any actions taken by the particular official who `possesses final authority to establish municipal policy with respect to the action ordered.'" Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1480 (11th Cir. 1991) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). Also, a corporation may be liable when a plaintiff establishes "a widespread practice that, `although not authorized by written law or express municipal policy,' is `so permanent and well settled as to constitute a custom or usage with the force of law.'" Brown, 923 F.2d at 1481 (quoting St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988)) (internal citations omitted). Plaintiffs have not referred to any company-wide custom within Goodwill that would trigger liability under the second option. Therefore, in determining Goodwill's liability the court looks to the actions of its final policy maker with regard to halfway houses.
According to the affidavits submitted in this case, Procknow was not Goodwill's final policy maker with regard to the Maitland facility. Although he was in charge of the daily function of the halfway house, he was constrained by policies created by Norris and his decisions were subject to review by Norris. Norris reviewed all of Procknow's decisions in this matter. Delegating authority to exercise discretion, as Norris did to Procknow with regard to the Maitland facility, does not render a subordinate a final policy maker for purposes of a civil rights action. See Wright v. Sheppard, 919 F.2d 665 (11th Cir.1990). Goodwill can only be held liable, therefore, if Norris' actions caused a constitutional violation.

C. Count I

In Count I of their complaint, Smith and Miele contend that Defendants violated their right to equal protection of the laws, asserting that men at the facility were not subjected to sexual harassment as they were. In any claim against Procknow and Goodwill, however, Plaintiffs must contend that they discriminated against Smith and Miele in their actions, and that they intended to discriminate on the basis of gender. See, e.g., Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The only way to establish that Procknow and Goodwill violated Plaintiffs' equal protection rights would be to demonstrate that Procknow and Norris would have acted differently if the victims of the alleged harassment had been men. Smith and Miele have failed to present any evidence that suggests this. Also, Plaintiffs have failed even to allege that either Procknow or Goodwill intended to discriminate against them on the basis of gender. Accordingly, Plaintiffs' charge in Count I must be dismissed.

D. Count II

Count II of Plaintiffs' complaint, in which Smith and Miele claim to have been subjected to cruel and unusual punishment, can be separated into two analytically distinct bases for Procknow's and Goodwill's liability. First, Plaintiffs may claim that Procknow and Goodwill are liable as supervisors for Wilson's alleged conduct. Second, Plaintiffs may assert that permitting Wilson to continue to work after this conduct had been reported constituted an inhumane condition of confinement, for which Procknow and Goodwill should be liable. The court will address these two claims separately.

1. Supervisory Liability
Generally, standards of liability in Bivens actions track those for liability of state and local officials under 42 U.S.C. § 1983 (1994). See Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Butz v. Economou, 438 U.S. 478, 98 *1188 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Courts have created special rules for supervisory liability in civil rights actions. In the Eleventh Circuit, "supervisors can be liable under section 1983 only if they actually participated in the allegedly wrongful act, or if a causal connection exists between their acts and the alleged violation." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1560-61 (11th Cir. 1993); see also LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). Because Plaintiffs have not alleged that anyone other than Wilson participated personally in the sexually offensive conduct, Plaintiffs must establish a causal connection between the other defendants' actions and the alleged constitutional violation.
The evidence submitted to the court does not support a claim that Procknow or Goodwill caused the sexual harassment. Wilson met or exceeded all of the requirements for employment at the halfway house, and underwent more than fifty hours of training commensurate with his position at the facility. Included in his training were discussions about the inappropriateness of sexually harassing inmates, and ethics classes on acting with inmates professionally. Specifically, Wilson signed a document acknowledging that he would abide by Goodwill's policy not to discriminate on the basis of sex.
Also, Goodwill implemented grievance procedures for inmates to follow if they had complaints about their treatment at the facility. Goodwill urges inmates to submit verbal or written complaints to their on-site case managers. If an inmate is not satisfied with the issue's resolution after discussing it with the case manager, he or she may submit a formal written grievance, to which Goodwill must respond within five days. Also, inmates may bypass Goodwill's employees altogether and submit grievances to the Bureau of Prisons or to their probation officers. Plaintiffs have submitted no evidence that Goodwill has failed to adhere to this policy. Plaintiffs have failed to establish that any act or omission by Procknow or Norris caused Wilson's alleged acts of sexual harassment. Accordingly, neither Procknow nor Goodwill may be held liable as supervisors for Wilson's alleged harassment.

2. Inhumane Condition of Confinement
The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. The Supreme Court has held that this provision applies to some deprivations suffered during imprisonment but not specifically part of a sentence. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order to state an Eighth Amendment claim a plaintiff must prove that prison officials acted with "deliberate indifference" toward inhumane conditions within a prison, and not solely the presence of objectively inhumane conditions. Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). The Supreme Court later held,
[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.
Farmer v. Brennan, ___ U.S. ___, ___, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Assuming Wilson's actions amounted to an inhumane condition of confinement, Plaintiffs must prove that Procknow and Norris knew about Wilson's treatment of inmates and did nothing to prevent him from continuing that course of conduct.
The evidence submitted by the parties suggests that rather than acting with indifference to Plaintiffs' allegations, Procknow and Norris acted responsibly and swiftly. Two grievances were filed complaining of Wilson's conduct. The first, filed in June 1993, made no allegation of sexually harassment. Rather, Procknow's investigation of the complaint only revealed that Wilson had examined the room and tried to wake one of the inmates. In her deposition Miele acknowledged that Wilson did nothing more than "linger" in her room and attempt to wake one of her roommates. (Miele deposition at 53.) Procknow investigated the complaint, but since one of *1189 the inmates had been sleeping on the floor and was obscured from view, Procknow determined that Wilson had not acted unprofessionally. Nevertheless, Procknow counseled Wilson on how to conduct a room check properly. Given the nature of the grievance the inmate filed, the court cannot conclude that Procknow's and Norris's response amounted to deliberate indifference to an inhumane condition of confinement.
No one complained again about Wilson's conduct until August 2, 1993, when Smith complained of sexual harassment. Procknow immediately suspended Wilson pending his investigation. After the investigation uncovered additional allegations of sexual harassment, Procknow terminated Wilson. Norris and Procknow acted promptly as soon as the first complaint of sexual harassment came to their attention. Rather than indifference, Procknow's and Norris's reaction to the allegations demonstrated their concern. Because the facts demonstrate that Procknow and Norris were not deliberately indifferent to Plaintiffs' conditions of confinement, Plaintiffs' Eighth Amendment claim against them must fail.

E. Qualified Immunity

Procknow and Goodwill have urged that they be accorded qualified immunity from suit in this case. "Qualified immunity protects government officials performing discretionary functions from civil trials ... and from liability if their conduct violates no `clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Qualified immunity shields government actors from liability, but not governmental entities. See id. In this situation, Goodwill should be considered a governmental entity, and not an individual government actor. Therefore, only Procknow is eligible for qualified immunity.
Qualified immunity protects government actors "in all but exceptional cases." Lassiter, 28 F.3d at 1149. "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Id. at 1150 (emphasis in original). Procknow's argument that the law was unclear as to whether private parties could be subject to Bivens actions, and therefore he should be protected by qualified immunity is insufficient. The focus of qualified immunity determinations is on the actor's conduct, not the potential legal recourse of those affected by his conduct. However, because the court concludes that Procknow did not violate any constitutional or statutory provision, the court alternatively holds that Procknow is eligible for qualified immunity. Federal law did not compel him to do anything differently from what he did in response to the allegations of Wilson's behavior.

III. Conclusion
The court concludes that Plaintiffs' claims are without merit as a matter of law. Plaintiffs failed to present any evidence of intent to discriminate, as required for an equal protection claim. Plaintiffs' Eighth Amendment claims also should fail, because Plaintiffs failed to establish that Procknow or Goodwill caused any injury, or acted with deliberate indifference to an inhumane condition of confinement. Finally, the principles of qualified immunity shield Procknow from individual liability. Therefore, the court GRANTS Procknow's and Goodwill's motions for summary judgment (Docs. 43, 46).
It is SO ORDERED.