Larry HOPE, Plaintiff-Appellant,

v.

Mark PELZER, Gene McClaran, et al., Defendants-Appellees.

No. 00-12150.

United States Court of Appeals,

Eleventh Circuit.

Feb. 2, 2001.

Appeal from the United States District Court for the Northern District of Alabama.(No. 96-02968-CV-BU-S), H. Dean Buttram, Jr., Judge.

Before TJOFLAT and BIRCH, Circuit Judges, and VINING[*], District Judge.

BIRCH, Circuit Judge:

In this case, we decide whether an inmate's Eighth and Fourteenth Amendment rights were violated when prison guards handcuffed him to a hitching post on two occasions, one of which lasted for seven hours without regular water or bathroom breaks. The district court granted summary judgment for the defendant prison guards because they were entitled to qualified immunity. We AFFIRM.

## I. BACKGROUND

Plaintiff-Appellant Larry Hope was an inmate at Limestone Correctional Facility ("Limestone") in 1995, where he was assigned to the chain gang. On two occasions, Hope was transported from the chain gang work site back to Limestone, where he was cuffed to a hitching post in the yard.

On 11 May 1995, Hope was engaged in a verbal altercation with another inmate on the chain gang. Both men were escorted back to Limestone, where they were cuffed to the hitching post. Hope was released two hours later, after the guards captain determined that the altercation was caused by the other inmate. While on the post, Hope was offered water and a bathroom break every fifteen minutes, and his responses to these offers were recorded on an activity log. He was examined by a prison nurse that evening, and showed no signs of injury.

On 7 June 1995, Hope was engaged in a physical altercation at the work site with a prison guard. There is a dispute about who started the fight, but Hope states that one of the guards started choking him because he fell asleep on the bus en route to the work site, and therefore did not exit promptly with the other

[*]Honorable Robert L. Vining, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

inmates. Hope was again brought back to Limestone, where he was again cuffed to the hitching post. This time, Hope was cuffed to the post for seven hours without a shirt. During this seven hour period, Hope was given water only once or twice, and was given no bathroom breaks.[1] He was examined by the prison nurse, who noted no injuries. Hope has since been released from prison.

Hope brought suit in federal court against eight Limestone guards,[2] alleging that his Eighth[3] Amendment rights had been violated, and seeking monetary damages. The district court ordered the defendants to submit special reports outlining their knowledge of the incidents Hope described in his complaint. The court considered these special reports as a motion to dismiss, and granted the motion on qualified immunity grounds. Hope appeals.

## II. DISCUSSION

We review a summary judgment appeal *de novo,* and view all facts in the light most favorable to the non-moving party. *See Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1454 (11th Cir.1998).

A.      *Hope's Constitutional Rights Were Violated*

Alabama Department of Corrections ("DOC") policy calls for inmates to be cuffed to a hitching post[4] to "eliminate the possibility of disruption of the work squad and to discourage other inmates from exhibiting similar conduct." R1-11-8.[5] Hope argues that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was cuffed to the hitching post on 11 May and 7 June 1995 in accordance

---

[1]We note that there is no activity log for this period that Hope spent on the hitching post, despite the policy that requires such a report. Because there is no report, Hope's allegations about the lack of water and bathroom breaks are uncontested.

[2]Hope subsequently moved to dismiss his claims against defendants Ted Loggins, Greg Jackson, Gary McGee, Joseph Stephenson, and James Kent, leaving only Mark Pelzer, Gene McClaran and Jim/ Keith Gates. In the same motion, he dropped a claim for excessive force.

[3]Hope argues that he also brought a Fourteenth Amendment due process claim. However, the district court found that the due process complaint was not signed and had no evidence of service of process. Therefore, it did not address this claim, and it is not before us now.

[4]The DOC refers to the hitching post as a "restraining bar" or a "rail." Here, we will use the term "hitching post," but the holding applies to any similar object that inmates are cuffed to in the manner described in this opinion.

[5]The written policy, Alabama Administrative Regulation Number 429, is not in the district court record, and, therefore, we will not address it here.

with this policy. We agree.[6]

The Eighth Amendment prohibits "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton infliction of pain.' " *Estelle v. Gamble,* 429 U.S. 97, 102-03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (citations omitted). Because Hope was not placed on the hitching post as the result of a court sentence or sentencing statute, he must prove a subjective violation of his rights as well as the objective violation of the Eighth Amendment. *See Wilson v. Seiter,* 501 U.S. 294, 300, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1991).

1.      The Subjective Requirement

The subjective component of Eighth Amendment jurisprudence requires a showing that the defendants were wanton in their actions, as opposed to merely negligent. *Id.* at 302, 111 S.Ct. at 2326. To overcome this subjective test, Hope must show that the officials knew that placing him on the hitching post created a "substantial risk of serious harm and [that they] disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994).[7] The Court in *Farmer* emphasized that the officials need only be aware of the *risk* of harm, as opposed to being aware of actual harm. *Id.* at 842, 114 S.Ct. at 1981.

Hope has met the burden of showing that the prison officials were aware that placing him on the hitching post created a substantial risk of harm, and that they did nothing to abate that risk. First, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Hope was cuffed standing to a hitching post, with his arms at approximately head level, in the hot sun for seven hours with no shirt, metal cuffs, only one or two water breaks, and no bathroom breaks. At one time,

---

[6]This section of the opinion will discuss Eighth Amendment jurisprudence as it applies to Hope's case. For an analysis of the historical background of an Eighth Amendment claim against the use of a hitching post, see *Austin v. Hopper,* 15 F.Supp.2d 1210, 1250-66 (M.D.Ala.1998). Because Hope is a member of the plaintiff class in *Austin,* that court discusses his allegations in its opinion. The case before us is a separate action, in that Hope is asking for monetary damages rather than injunctive relief, but the *Austin* court's analysis is sound and directly applicable to our case.

[7]We disagree with the district court in *Austin* in so far as the opinion applies the heightened subjective test found in *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), to the subjective element of Hope's claim. *Austin,* 15 F.Supp.2d at 1255. The *Whitley* test applies when officials act "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1084. Because the officers drove Hope back to Limestone before placing him on the hitching post, they no longer faced the type of exigent circumstances required to invoke the *Whitley* standard. We note, however, that despite applying the more stringent *Whitley* standard to Hope's case, the district court in *Austin* still found that Hope had met the subjective component of the Eighth Amendment analysis. *Austin,* 15 F.Supp.2d at 1265.

prison guards brought a cooler of water near him, let the prison dogs drink from the water, and then kicked the cooler over at Hope's feet. This is uncontested evidence of deliberate indifference to the risk of harm to Hope.

Second, in 1994, the Department of Justice ("DOJ") conducted an examination of the Easterling Correctional Facility in Alabama, and advised the DOC that use of the hitching post constituted improper corporal punishment and was not an acceptable use of restraints. *Austin,* 15 F.Supp.2d at 1249.[8] In this report, the DOJ recommended that the DOC cease use of the hitching post in order to meet constitutional standards. The DOJ report listed the health and safety risks associated with the use of the hitching post. The DOC replied to the report, stating that it had determined that use of the hitching post "is not unconstitutional and is necessary to preserve prison security and discipline." *Id.* In response, the DOJ informed the DOC that, "[a]lthough an emergency situation may warrant drastic action by corrections staff, our experts found that the 'rail' is being used systematically as an improper punishment for relatively trivial offenses. Therefore, we have concluded that the use of the 'rail' is without penological justification." *Id.* at 1249-50. This exchange between the DOJ and the DOC demonstrates that the DOC was aware of the substantial risk of harm created by use of the hitching post for prolonged periods of time. We find that Hope has satisfied the subjective requirement of the Eighth Amendment test.

2.      The Objective Requirement

The standard for an objective violation of the Eighth Amendment is whether a punishment "involve[s] the unnecessary and wanton infliction of pain' ... or [is] grossly disproportionate to the severity of the crime." *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (citations omitted). Because there is no clear test for what actions meet this standard, "the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.' " *Id.* (citations omitted). This standard of decency must be balanced, of course, against the prison officials' need to keep the prison safe. However, an infliction of pain "without penological justification" is considered to be "unnecessary and wanton." *Id.* (citations omitted).

Since abolishing the pillory over a century ago, our system of justice has consistently moved away

---

[8]Although this DOJ report was not before the district court in Hope's case, we are taking judicial notice of the report as permitted by Federal Rule of Evidence 201. *See United States v. Rey,* 811 F.2d 1453, 1457 n. 5 (11th Cir.1987) ("A court may take judicial notice of its own records and the records of inferior courts."); *National Fire Ins. Co. of Hartford v. Thompson,* 281 U.S. 331, 336, 50 S.Ct. 288, 290, 74 L.Ed. 881 (1930) ("We may notice the record of that case in this court.").

from forms of punishment similar to hitching posts in prisons. In *Gates v. Collier,* 501 F.2d 1291 (5th Cir.1974), in regard to "handcuffing inmates to the fence and to cells for long periods of time" and other such punishments, we stated that "[w]e have no difficulty in reaching the conclusion that these forms of corporal punishment run afoul of the Eighth Amendment, offend contemporary concepts of decency, human dignity, and precepts of civilization which we profess to possess." *Gates,* 501 F.2d at 1306.

Hope has met the objective standard of the Eighth Amendment. While on the hitching post in June, Hope was denied basic human necessities, such as water, and was even taunted by the guards in the process. While cuffed to the hitching post, Hope ran the obvious risk of becoming dehydrated or sunburned, injuring his wrists, or being ridiculed and harassed by other inmates on their way back from the work site, among other injuries.[9] The policy and practice of cuffing an inmate to a hitching post past the time when he constitutes a threat to himself or others violates the "broad and idealistic concepts of dignity, civilized standards, humanity and decency," *Estelle,* 429 U.S. at 102, 97 S.Ct. at 290 (quotation omitted), embodied in the Eighth Amendment.

3.      The Policy and Practice are Unconstitutional

We find that cuffing an inmate to a hitching post for a period of time extending past that required to address an immediate danger or threat is a violation of the Eighth Amendment. This violation is exacerbated by the lack of proper clothing, water, or bathroom breaks. We do not address the situation where this punishment or one similar to it is used for a short period of time after a physical altercation or other serious threat to prison safety to quell a disturbance and protect the safety of those around him. It is possible that there could be situations where an inmate would need to be temporarily cuffed to a stationary object for non-punitive purpose while the guards restored order. This is not that situation.

Our finding today is consistent with our ruling in *Ort v. White,* 813 F.2d 318 (11th Cir.1987), where a prison official refused to allow inmate Ort to drink water while on the chain gang until Ort agreed to work. In *Ort,* we found the official's action to be constitutional, in part because Ort "essentially had the keys to the water keg in his own pocket. Whenever he agreed to abide by the prison rules, he would be given water just like everyone else." *Id.* at 326. While the DOC claims that Hope would have been released from the hitching post had he asked to return to work, the evidence suggests that is not the case. First, Hope never refused to

---

[9]In the words of the district court in *Austin,* "inmates placed upon the hitching post suffered extreme pain, anguish, humiliation, mental suffering, and resulting physical soreness and depression." *Austin,* 15 F.Supp.2d at 1256.

work. During the May incident, he was the victim in an altercation on the work site, but he never refused to do his job. During the June incident, Hope was involved in an altercation with prison guards. There is nothing in the record, however, claiming that he refused to work or encouraged other inmates to refuse to work. Therefore, it is not clear that the solution to his hitching post problem was to ask to return to work. Second, Hope was placed in a car and driven back to Limestone to be cuffed to the hitching post on both occasions. Given the facts, it is improbable that had Hope said, "I want to go back to work," a prison guard would have left his post at Limestone to drive Hope back to the work site. It is more likely that the guards left Hope on the post until his work detail returned to teach the other inmates a lesson.

Herein lies the crux of our finding that the guards' placing Hope on the hitching post for extended periods of time was unconstitutional: there is no evidence in the record that Hope posed a continuing threat to prison safety while being transported from the work site to the prison or once he arrived at the prison itself. There is no evidence that Hope would have been a continuing threat had he remained at the work site. In *Williams v. Burton,* 943 F.2d 1572 (11th Cir.1991) (per curiam), we found that the prison officials did not violate the Eighth Amendment by using four-point restraints to control an inmate who "was trying to incite other inmates to join him in a prison disturbance ... [that] posed a significant security concern." *Williams,* 943 F.2d at 1575. We stated, however, that,

> once restraints are initially justified, it becomes somewhat problematic as to how long they are necessary to meet the particular exigent circumstances which precipitated their use. The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation. *Id.* at 1575-76.

This rule was also applied earlier in *Ort,* where we acknowledged that, "we might have reached a different decision if later, once back at the prison, officials had decided to deny appellant water as punishment for his refusal to work." *Ort,* 813 F.2d at 326.

For the above-stated reasons, we find that the policy and practice of cuffing an inmate to a hitching post or similar stationary object for a period of time that surpasses that necessary to quell a threat or restore order is a violation of the Eighth Amendment. It is our intention that this holding serve as a bright-line rule for any future case involving the use of a hitching post by prison authorities. *See County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[I]f the policy of avoidance [of constitutional issues] were always followed in favor of ruling on qualified immunity whenever there was no clearly settled constitutional rule of primary conduct, standards of official conduct would tend to remain

uncertain, to the detriment of both officials and individuals. An immunity determination, with nothing more, provides no clear standard, constitutional or nonconstitutional.").

B.      *The Guards Are Entitled to Qualified Immunity*

Despite the unconstitutionality of the prison practice and, therefore, the guards' actions, there was no clear, bright-line test established in 1995 that would survive our circuit's qualified immunity analysis. Therefore, we affirm the district court's granting summary judgment for the defendants on qualified immunity grounds.

Public officials are entitled to qualified immunity from monetary damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The qualified immunity test is "one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith." *Swint v. City of Wadley, Ala.,* 51 F.3d 988, 995 (11th Cir.1995).

The law on qualified immunity in our circuit is clear. When analyzing a qualified immunity defense, "[w]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* (citations omitted). Thus, "to be 'clearly established,' the federal law by which the government official's conduct should be evaluated must be preexisting, obvious and mandatory so that a similarly situated, reasonable government agent would be on notice that his or her questioned conduct violates federal law under the circumstances." *Hill v. Dekalb Regional Youth Det. Ctr.,* 40 F.3d 1176, 1185 (11th Cir.1994).

Hope argues that several of our cases, including *Gates* and *Ort,* established a bright-line rule against use of the hitching post. While we recognize that the inappropriateness of the hitching post could be inferred from these opinions, a bright-line rule for qualified immunity purposes "is not to be found in abstractions—to act reasonably, to act with probable cause, and so forth—but in studying how these abstractions have been applied in concrete circumstances." *Lassiter v. Alabama A&M Univ. Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994) (citations omitted). It is important to analyze the facts in these cases, and determine if they are "materially similar" to the facts in the case in front of us. *Suissa v. Fulton County, Ga.,* 74 F.3d 266, 269-70 (11th Cir.1996) (per curiam) (citations omitted). Though analogous, the facts in *Gates* and *Ort* are not "materially similar" to Hope's situation. In *Ort,* the defendant was refused water while at a work site, until he agreed to do his job of carrying water to the work site. *Ort,* 813 F.2d at 326. *Gates* was an even more

distinct case, as it involved an effort to make substantial changes based on the unconstitutional "conditions and practices in the maintenance, operation and administration" of a prison. *Gates,* 501 F.2d at 1295. We do not find that the language in *Gates, Ort,* or any other Eleventh Circuit or Supreme Court opinion established that impermissible use of the hitching post constitutes cruel and unusual punishment clearly enough that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

## III. CONCLUSION

The practice of leaving an inmate cuffed to a hitching post when he no longer presents a threat to himself or those around him is a violation of that prisoner's Eighth Amendment right to be protected from cruel and unusual punishment, particularly when he is denied water and bathroom breaks. In 1995, however, there was no case law in this circuit with facts and legal analysis clear enough to serve as a bright-line rule establishing this violation, so the prison guards cannot be held financially responsible for their actions. Accordingly, we AFFIRM the judgment of the district court.