James S. MCCURRY, Plaintiff,

v.

Michael W. MOORE, D.L. Franklin, and April Bass, Defendants.

No. 4:01cv439–SPM.

United States District Court, N.D. Florida, Tallahassee Division.

Nov. 21, 2002.

James S. McCurry, Hickory, NC, Pro se.

Joy A. Stubbs, Attorney General of Florida, Tallahassee, FL, for Defendants.

### ORDER

MICKLE, District Judge.

This cause comes on for consideration upon the magistrate judge's report and recommendation dated October 25, 2002. The parties have been furnished a copy of the second report and recommendation and afforded an opportunity to file objections. Pursuant to Title 28, United States Code, Section 636(b)(1), I have made a *de novo* determination of any portions to which an objection has been made.

Having considered the report and recommendation and all objections thereto timely filed, I have determined that the report and recommendation should be adopted.

Accordingly, it is now **ORDERED** as follows:

1. The magistrate judge's report and recommendation is adopted and incorporated by reference in this order.

2. That Defendants' summary judgment motion, doc. 13, is **GRANTED in** part, that summary judgment is **GRANTED** in favor of Defendant Moore on all claims, in favor of Defendant Franklin as to the failure to train and supervise claim, any damage claim in his official capacity, and any damage claim in his individual capacity arising prior to March 29, 2000, in favor of Defendant Bass as to any damage claim in her individual capacity arising prior to March 12, 2000, and that in all other respects, the summary judgment motion is **DENIED** and this case **REMANDED** to the magistrate judge for further proceedings.

### REPORT AND RECOMMENDATION

SHERRILL, United States Magistrate Judge.

Defendants' special report, doc. 16, was construed as a motion for summary judgment and Plaintiff was advised of his burden in opposing the motion. Doc. 18. Plaintiff filed a response, doc. 20, and the motion is now ready for a ruling.

### I. Allegations of the complaint

Plaintiff, proceeding *pro se* in this case, is a former inmate of the Florida Department of Corrections. Doc. 9. Plaintiff filed a civil rights complaint under 42 U.S.C. § 1983, doc. 1, alleging that he was held in prison beyond the expiration of his sentence. Plaintiff contends that Defendants Bass and Franklin erroneously calculated his gaintime, failed to utilize the 1993 sentencing guidelines in establishing his tentative release date, and despite being advised of these mistakes on several occasions, willfully and knowingly continued to "misapply the information" which resulted in Plaintiff's continued and unlawful confinement. Plaintiff was granted an emergency release on April 19, 2000, but

contends he was entitled to be released on or about November 14, 1999. Plaintiff claims that Defendants Franklin and Moore failed to adequately train or supervise Defendant Bass, and that Defendant Moore failed to "adequately institute policy and procedures to provide for proper administration of gain-time awards under Florida law."

Plaintiff contends that all Defendants violated his rights under the Eighth Amendment and inflicted cruel and unusual punishment by continuing to incarcerate him beyond the expiration of his sentence. He further asserts that Defendants Bass and Franklin denied him procedural due process of law. Plaintiff seeks nominal, compensatory, and punitive damages against Defendants in both their official and individual capacities.

## II. Legal standards governing a motion for summary judgment

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. *Anderson v. Liberty Lobby,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

"Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Owen v. Wille,* 117 F.3d 1235, 1236 (11th Cir.1997), *cert. denied* 522 U.S. 1126, 118 S.Ct. 1074, 140 L.Ed.2d 133 (1998), *quoting Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). *Owen v. Wille,* 117 F.3d at 1236; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

## III. The relevant Rule 56(e) evidence

It is undisputed that a mistake was made in calculating Plaintiff's gaintime and release date. The mistake occurred relating to Count VII of the information. Originally Defendants thought that this offense occurred on March 29, 1994. Since that date was after January 1, 1994, and since the gaintime law changed significantly on that date, Defendants concluded that no gaintime could be awarded for the prison sentence for this offense. It was then learned that the offense alleged in Count VII commenced before January 1, 1994, and ended on March 29, 1994, and when this was discovered, Plaintiff was immediately released.

More specifically, Plaintiff entered the custody of the Department of Corrections

on December 11, 1997, doc. 16, ex. A, Phelps affidavit, having been adjudicated guilty of five third degree felonies on December 1, 1997. Doc. 16, ex. B, pp. 7–8 (the pages of the exhibits to the summary judgment motion have been numbered by the court in the bottom right-hand corner). The offenses for which Plaintiff was convicted were listed on the original information dated November 6, 1996, as: (1) count I—grand theft auto; (2) count II—grand theft auto; (3) count III—grand theft auto; (4) count VII—possession of motor vehicle with altered vehicle identification number; and (5) count VIII—possession of counterfeit motor vehicle title. Doc. 16, ex. A, ex. 1, pp. p. 3. Sentence was deferred until December 3, 1997, doc. 16, ex. A, ex. 1, p. 7, and on that day, Plaintiff was sentenced to five years in prison on each count, each count to run concurrent with the other counts. Doc. 16, ex. A, ex. 1, pp. 9–24. Plaintiff was also given 4 days credit for time served prior to imposition of sentence. *Id.*

Plaintiff was convicted after a trial. The offenses of conviction occurred between February 18, 1993, and April 13, 1994. Doc. 16, ex. A, ex. 1, p. 25 (sentencing scoresheet). The original information lists the date of the offenses as: (1) count I—February 18, 1993, "continuing to on or about" April 13, 1994; (2) count II—April 1, 1993, "continuing to on or about" April 13, 1994; (3) count III—October 1, 1993, "continuing to on or about" March 29, 1994; (4) *count VII—March 29, 1994;* and (5) count VIII—April 1, 1993, "continuing to on or about" April 13, 1993. Doc. 16, ex. A, ex. 1, pp. 3–5; ex. B, ex. 2, pp. 3–5.

At some point unknown on this record, an Amended Information was filed which altered the date for count VII, listing it as occurring between October 1, 1993, "continuing to on or about" March 29, 1994. Doc. 16, ex. A, ex. 4, p. 4. The copy of the Amended Information presented as evidence in this record is not signed. *Id.,* at p. 5.

Plaintiff's "primary offense" was listed on the scoresheet as the three counts of grand theft auto. The two counts for possession of the altered VIN and possession of a counterfeit title were listed as "additional offenses at conviction." *Id.* The sentencing transcript reveals that there was a debate between the lawyers as to whether the 1993 sentencing guidelines or the 1994 sentencing guidelines controlled Plaintiff's case. Doc. 16, ex. A, ex. 2, pp. 10–14. The sentencing court accepted the State's argument that the 1993 guidelines controlled because the Information alleged that the beginning date of Count I was February 18, 1993. *Id.,* at p. 14.

On March 12, 2000, Plaintiff submitted an informal grievance to Defendant Bass, Plaintiff's classification officer. Doc. 16, ex. B, ex. 1, p. 2. Plaintiff complained that he had been held "long past" his release date and, while citing to specific lines of the transcript, stated that the transcript revealed he "was sentenced under the 1993 guidelines on December 3, 1997 to (5) years." *Id.* Plaintiff asserted that the Department had not "deduct[ed] one-third off [his] sentence as" it should and complained that he should have been released on or about August 12, 1999. *Id.* This grievance did not mention an amended information and did not argue that the offense conduct alleged in Count VII commenced before January 1, 1994.

Defendant Bass received Plaintiff's informal grievance and avers in her affidavit that "no transcript pages were attached." Doc. 16, ex. B, p. 1. Defendant Bass also avers that she "reviewed the sentencing

documents contained in [Plaintiff's] record." Doc. 16, ex. B, p. 1. Defendant Bass determined that one of Plaintiff's offenses (that is, Count VII) "had an offense date of March 29, 1994." *Id.* Because an offense committed on or after January 1, 1994, was not eligible for basic gaintime, Defendant Bass concluded that Count VII was "the controlling sentence," that "Count VII had not reached its expiration date and therefore [Plaintiff] was not entitled to release." *Id.* Defendant Bass then denied Plaintiff's informal grievance and responded as follows:

> Upon review of case number 96–1142 your offense date is 3–29–1994. Effective for offenses committed on or after January 1, 1994, no basic gain-time will be applied on any sentence for any crime. Based on the above information, your grievance is denied.

Doc. 16, ex. B, ex. 1, p. 2.[1] Defendant Bass signed the response on the informal grievance and dated it March 13, 2000. *Id.*

On March 21, 2000, Plaintiff submitted a formal grievance to the superintendent's office. Doc. 16, ex. B, ex. 3, p. 2. Plaintiff wrote:

> The attached sentencing transcript clearly reflects that I was sentenced under the 1993 guidelines. The 3–29–1994 date is related to subsequent charges which were consolidated and all tried at the same jury trial. The trial Judge clearly determined that my activity began in 1993, and I was sentenced under the 1993 guidelines. You may construe that as a notice of intent to sue the F.D.O.C. for knowingly and unlawfully holding me long past my release date.

Doc. 16, ex. B, ex. 3, p. 2. This formal grievance again did not mention any

amended information and did not state that such an amended information was attached.

Defendant Franklin responded to Plaintiff's grievance on March 29, 2000. *Id.* The response, which denied the grievance, states:

> Your grievance has been received and evaluated. Upon a thorough review of the Department of Corrections records, you were given credit for 600 days basic gaintime on case # 96–21142 components 1,2,3, and 5. Componenet [sic] 4 has an offense date of 3–29–94 and is controlling your overall release date. Per 33–603.402(1)(A)(8), the Department of Corrections will award deductions from a sentence in the form of basic gaintime to encourage satisfactory inmate behavior. (1) ineligibility (A) no inmate shall be eligible to receive or accumulate basic gaintime (8) if serving a sentence for a crime committed on or after January 1, 1994.

Doc. 16, ex. B, ex. 3, p. 2.

Defendant Franklin was the Assistant Warden of Operations at Hamilton Correctional Institution. Doc. 16, ex. C. Defendant Franklin stated in his affidavit that he himself did not have any "background in sentence structure or gain time calculation." *Id.* He said that grievances relating to a sentence were normally handled by the Assistant Warden of Programs. *Id.* However, Defendant Franklin "would handle such grievances in cases where the Assistant Warden of Programs was unavailable." *Id.* He said that when he handled these grievances, he routinely sent such grievances to the Classification Department for review. *Id.* Defendant

---

1. Defendant Bass erroneously listed Plaintiff's case number as 96–1142. The actual case number was 96–21142. Doc. 16, ex. B, ex. 2, pp. 7–22.

Franklin stated that he received Plaintiff's grievance sometime around March 21, 2001[sic],[2] and forwarded it to the Classification Department. *Id.* Defendant Franklin "signed the response prepared by the Classification Department because it appeared to be a reasoned response." *Id.* Defendant Franklin's signature on the response enabled Plaintiff "to go to the next level with his appeal." *Id.*

On April 3, 2000, Plaintiff filed an appeal with the Office of the Secretary. Doc. 16, ex. A, ex. 2, p. 2. Plaintiff again said that he was "being unlawfully incarcerated by the F.D.O.C. long past [his] November 14, 1999 release date." *Id.* Plaintiff said in his appeal that "the attached documents would show that the Department misapplied the information provided by the trial court as attorney David G. Vinikoor, P.A. confirms in his March 29, 2000 letter." *Id.* Plaintiff states in his appeal that the "Warden was provided the same record that" his attorney spoke of and that the attached documents show all five counts have a date beginning in 1993 and continuing into 1994. *Id.,* at 4. He specifically alleged that the offense dates of Count VII were October 1, 1993, to March 29, 1994. *Id.* Attached to this grievance appeal are pages from the amended information. *Id.,* pp. 16–18. Unlike the original information, however, the signature page is completely missing from the copy attached to this grievance appeal. *Compare* Doc. 16, ex. A, ex. 1, pp. 3–6 (original information). Thus, it was unclear from this copy whether this amended information was actually filed.

The secretary's representative denied Plaintiff's grievance appeal on April 28, 2000. Doc. 16, ex. A, ex. 2, p. 3. The

response stated that the information in the Department's file showed an offense date for Count seven as March 29, 1994. Thus, the Department determined that Plaintiff could not earn basic gaintime for that count. *Id.* The response also stated that the Department would inquire "to the court *if an amended information was filed* with different offense dates." *Id.* (emphasis added). Further, it was stated in the response that "[i]f the court provide[d] new information, [Plaintiff's] sentence [would] be corrected accordingly." *Id.*

The March 29, 2000, letter referred to in Plaintiff's appeal has been provided as evidence. Doc. 16, ex. A, ex. 2, p. 6. That letter indicates that inmate Jason Wilson wrote a letter on Plaintiff's behalf to an attorney, David Vinikoor, "concerning an alleged scrivener's error resulting in an illegal sentence." *Id.* Mr. Vinikoor's March 29th response to Plaintiff states that he did not find a scrivener's error, but believed the problem was with the Department of Corrections "which apparently misapplied the information provided by the trial court concerning the dates of the offenses." *Id.* The letter also confirms Plaintiff's statement that Plaintiff's "sentence and judgment relate to offenses which began in 1993 and ended in 1994 . . . ." *Id.*

Inmates sentenced for offenses committed after July 1, 1978, but prior to January 1, 1994, are eligible for basic gaintime. Doc. 16, ex. A, (hereinafter "Phelps affidavit"). However, pursuant to FLA. STAT. § 944.275(6)(a), inmates sentenced for offenses committed on or after January 1, 1994, are not eligible for basic gaintime. *Id.* Defendants acknowledge that Plaintiff

---

**2.** This is an obvious error as the grievance was dated March of 2000. Doc. 16, ex. B, ex.

3, p. 2.

was sentenced under the 1993 guidelines, but because Count VII had an offense date of March 29, 1994, as shown on the original information, the Department determined that Plaintiff "was not eligible to receive basic gain-time on that particular count." *Id.* The other offenses "had continuing offense dates that began prior to January 1, 1994," which entitled Plaintiff to basic gaintime on Counts I–III, and VIII. *Id.* The Department viewed count VII as "the controlling sentence." *Id.*

The Phelps affidavit also states that "[t]rue and correct copies of the sentencing documents that appear in the official records of the Department of Corrections have been attached to this affidavit as Exhibit 1." Doc. 16, ex. A, p. 2. Within exhibit 1 of exhibit A, is a copy of the original information dated November 6, 1996. Count VII charges that Plaintiff "on the 29th day of March, A.D.1994, ... did unlawfully and knowingly possess, sell or offer for sale, conceal or dispose of a motor vehicle of a major component thereof ...." Doc. 16, ex. A, ex. 1, p. 5.

Emily Phelps further stated in her affidavit that while reviewing Plaintiff's grievance appeal, she "noted that the charging information page for Count VII ... showed a different date of offense from the sentencing documents received by the Department of Corrections upon delivery of [Plaintiff] into custody." Phelps affidavit. p. 2. This was the amended information mentioned above, the one without a last page for a signature. Ms. Phelps "contacted the Clerk of Court for Broward County to ascertain which documents were correct." *Id.* She was eventually referred by the Clerk to Assistant State Attorney Charles Vaughan and she explained the discrepancies to him. *Id.* Mr. Vaughan advised "that his notes showed that the

dates for Count VII were to be on or between October 1, 1993, to March 29, 1994; however, he advised he would need to order the court file, obtain the certified information and charging document that was sent to the jury, and then call me back." *Id.*, at pp. 2–3. Ms. Phelps completed a "Verbal Documentation Form" which has been provided as evidence. *See* doc. 16, ex. A, ex. 3.

> On April 18, 2000, at 3:20 p.m., an Amended Information for Case Number 96–21142CF was received. The order was verified and the [Plaintiff's] release was approved at 11:30 a.m. on April 19, 2000, and his release directed at 2:19 p.m. that same date.

Phelps affidavit, p. 3; *see* doc. 16, ex. A, ex. 4.

Ms. Phelps clarifies in her affidavit that she is the official who provided the response on Plaintiff's grievance appeal. Phelps affidavit, p. 3. She completed the response and signed it on April 17, 2000. *Id.; see* ex. A, ex. 2, p. 3. The grievance was then returned "to the Bureau of Inmate Grievances for final processing." Phelps affidavit, p. 3. The grievance appeal is signed by the Secretary's Representative on April 28, 2000. *See* ex. A, ex. 2, p. 3.

Defendant Bass also attests that "[h]ad Plaintiff brought to [her] attention that there might have been an error in the sentencing documents received by the department, [Defendant Bass] would have contacted the Central Office Bureau of Sentence Structure for further direction." Doc. 16, ex. B, p. 2. Defendant Bass also averrs that she "did not perceive there to be an error, but rather a misunderstanding on [Plaintiff's] part as to the eligibility for basic gain-time on Count VII ...." *Id.*

Further, Defendant Bass states that "the fact that the trial judge imposed a 1993 guidelines sentence for an offense committed on March 29, 1994, would not necessarily have been an indication of an error in the sentencing documents" because "many sentences are imposed pursuant to plea agreements." *Id.* Plaintiff was not sentenced pursuant to a plea agreement, however, and Plaintiff's sentencing documents clearly state Plaintiff was "tried and found guilty." Doc. 16, ex. B, ex. 2, p. 7.

In response to Defendants' evidence, Plaintiff has submitted the affidavit of inmate Jason Wilson. Doc. 20, attachment. Inmate Wilson testified that Plaintiff asked him "to review his legal documents and prepare a motion for Post Conviction Relief for him" and he agreed to do so. *Id.* Inmate Wilson's review led him to believe that Plaintiff "was being unlawfully detained and should have been released on or about November 12, 1999." *Id.* Inmate Wilson averred that he then prepared an informal grievance for Plaintiff, "*stapled to the grievance the amended Information,* the sentencing transcript pages (617–621), the 1993 guidelines scoresheet and the 12/3/97 Court status from Broward County." *Id.* (emphasis added). Inmate Wilson further testified that he and Plaintiff met in the institution's law library and made "enough copies ... for the informal and the formal grievances, one to the Warden and one to the Secretary." *Id.* Inmate Wilson observed "Plaintiff sign the grievance and place it in the institutional mailbox on March 12, 2000 with all named documents attached." *Id.*

Plaintiff also submitted an affidavit in which he testified that he met Jason Wilson at Hamilton Correctional Institution in early March, 2000. Doc. 20, attachment. Plaintiff asked inmate Wilson to help him

prepare a motion for post-conviction relief and during Wilson's review of Plaintiff's legal documents, Wilson "came to the conclusion that [Plaintiff] was being unlawfully detained and should have been released on or about November 12, 1999." *Id.* Inmate Wilson prepared the informal grievance for Plaintiff and met with Plaintiff in the law library on March 12, 2000. *Id.* At that time, enough copies were made of the Amended Information, 1993 sentencing guidelines scoresheet, and sentencing transcripts to be submitted with the informal grievance, formal grievance, and grievance appeal to the Secretary's Office. *Id.* Plaintiff testified that on March 12th, the amended information, sentencing transcripts, and 1993 sentencing guidelines scoresheet were "stapled to the informal grievance by Mr. Wilson in [Plaintiff's] presence." *Id.* Plaintiff "signed the informal grievance in Mr. Wilson's presence in the library and placed it in the institutional mailbox beside the cafeteria." *Id.* Plaintiff further testified that he attached the amended information, sentencing transcripts, and 1993 sentencing guidelines scoresheet at all three levels of the grievance process. *Id.*

## IV. Analysis

### A. Respondeat superior and failure to train (Moore and Franklin)

 As their second argument, Defendants Moore and Franklin contend that Plaintiff has not shown a basis for liability for a failure to train Defendant Bass, noting that *respondeat superior* is not a basis for liability. Suits brought under § 1983 require an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. *Williams v. Bennett,* 689 F.2d 1370, 1380–81 (11th Cir.1982), *cert. denied,* 464 U.S.

932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). Supervisory personnel cannot be held vicariously liable under § 1983 for the acts of subordinates, but may be independently liable where a reasonable person in the supervisor's position would have known that his conduct infringed the plaintiff's rights and the supervisor's conduct was causally related to the subordinate's constitutional violation. *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir.1990) (citing cases); *McKinney v. DeKalb County*, 997 F.2d 1440, 1443 (11th Cir.1993), citing *Greason*.

 Liability may exist under § 1983 if an employee has not been adequately trained and a constitutional wrong is caused by that failure to train. *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); *Gilmere v. Atlanta*, 774 F.2d 1495, 1503–1504 (11th Cir.1985). In such a case, the liability is not based on *respondeat superior* but because the supervisor's own actions or inactions caused the harm. The failure to train must, in some relevant respect, evidence "a 'deliberate indifference' to the rights of" citizens. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489–90 (11th Cir.1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998), *quoting City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205; *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Notably, "[i]t is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *Springfield v. Kibbe*, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978)). Moreover, liability can only be imposed when the "deliberate indifference" is undertaken by an official with final policymaking authority. *See Vineyard v. County of Murray*, 990 F.2d 1207, 1212 (11th Cir.1993); *Floyd v. Waiters*, 133 F.3d 786, 795–96 (11th Cir.1998)

 A claim concerning an isolated incident is generally insufficient to sustain a claim for failure to train because those officials who are responsible for creating a policy must be on notice of the constitutional deficiencies. In *Wright v. Sheppard*, 919 F.2d 665 (11th Cir.1990), the Eleventh Circuit held a sheriff's department could not be liable for the actions of a deputy unless there was evidence "of a history of widespread prior abuse" such that the sheriff was "on notice of the need for improved training or supervision." 919 F.2d at 674. *See also Church v. City of Huntsville*, 30 F.3d 1332, 1342–46 (11th Cir.1994) (holding plaintiff's claims could not succeed without proof that the City had knowledge of prior incidents); *Popham v. City of Talladega*, 908 F.2d 1561, 1564–65 (11th Cir.1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train), *cited in Gold v. City of Miami*, 151 F.3d 1346, 1350–51 (11th Cir.1998). As a corollary, evidence that a policy or procedure was not followed by an employee is insufficient to establish liability against the supervisory official.

 In this case, there is no evidence of a policy or custom adopted by Defendant Moore which denied Plaintiff timely release from prison. Plaintiff has pointed to no evidence that a policy or procedure of Defendant Moore caused his alleged constitutional violation. There is, indeed, no evidence of Defendant Moore's involvement at all. There is no evidence to make

Defendant Moore accountable for failing to anticipate the mistake which occurred here. Summary judgment should be granted in favor of Defendant Moore.

■ Likewise, there is no evidence that Defendant Franklin supervised Defendant Bass, was responsible for training Defendant Bass, or may be considered a "policymaker" as to the calculation of gaintime. Defendant Franklin had no background in sentence calculation and Bass worked in an entirely different department from operations. Defendant Franklin's motion for summary judgment should be granted on Plaintiff's claim that he failed to adequately supervise or train Defendant Bass.

### B. Failure "to show a claim under Section 1983"

This is Defendants' first argument. Defendants contend that Plaintiff has not come forward with evidence to support his claims.[3] Plaintiff alleges that Defendants Franklin and Bass directly caused his continued incarceration beyond the expiration of his sentence in violation of the Eighth Amendment and procedural due process under the Fourteenth Amendment.

■ The underlying constitutional right is well established. When a prisoner's sentence has expired, he is entitled to release. *Whirl v. Kern,* 407 F.2d 781, 791 (5th Cir.)(stating, "[t]here is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence.") (citations omitted), *cert. denied* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969); *Cannon v. Macon County,* 1 F.3d 1558, 1562–63 (11th Cir.1993), *modified* 15 F.3d 1022

(11th Cir.1994) (finding "[t]he constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release" a well recognized § 1983 claim), *citing Sivard v. Pulaski County,* 959 F.2d 662 (7th Cir.1992) and *Sanders v. English,* 950 F.2d 1152 (5th Cir.1992); *Lee v. Dugger,* 902 F.2d 822, 824, n. 3 (11th Cir. 1990)(Tjoflat, J., concurring)(noting the plaintiff "may well have a state tort claim for false imprisonment" where he alleged he was kept in prison past the expiration of his sentence, but that does not necessarily mean that the prisoner has a constitutional claim); *Douthit v. Jones,* 619 F.2d 527, 532 (5th Cir.1980)(stating "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."). *See also Palmer v. Dugger,* 833 F.2d 253, 256–57 (11th Cir.1987)(addressing an equal protection claim and noting that the state "'may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigence'" and quoting *Williams v. Illinois,* 399 U.S. 235, 241–42, 90 S.Ct. 2018, 2022–23, 26 L.Ed.2d 586 (1970)).

■ There is some confusion as to whether the constitutional right is founded in due process or the Eighth Amendment. In *Cannon v. Macon County,* 1 F.3d 1558, the Eleventh Circuit reversed the district court's granting a motion for judgment notwithstanding the verdict on a § 1983 claim "based on an asserted deprivation of liberty without due process." 1 F.3d at 1561–1563. The court held that a § 1983

---

**3.** The argument which follows this heading argues the summary judgment evidence, so this is not a motion to dismiss for failure to

state a claim, but a motion for summary judgment as a matter of law.

claim for false imprisonment may be made under the Fourteenth Amendment. *Id.,* at 1562–63. The court noted that "continued detention in the face of repeated protests will deprive the accused of liberty without due process." 1 F.3d at 1562, *citing Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The court relied upon *Douthit v. Jones,* 619 F.2d 527 (5th Cir.1980) and its statement of the elements for common law false imprisonment[4] to sustain the jury's $50,000.00 verdict that plaintiff's due process rights were violated. *Cannon,* 1 F.3d. at 1563.

*Cannon,* however, involved a pretrial detainee. The Due Process Clause of the Fourteenth Amendment is commonly applicable to claims in the jail setting. Such claims would be premised upon the Eighth Amendment were the claimant a sentenced prisoner. The threshold for liability, however, is the same as will be discussed ahead.[5]

▮▮▮ *Cannon* found that the defendant's "failure to take any steps to identify [plaintiff] as the wanted fugitive was sufficient to raise a question of fact as to [the defendant's] deliberate indifference toward the plaintiff's due process rights." 1 F.3d at 1564.[6] *Cannon,* thus, supports the premise that, in 1980, as a consequence of the *Douthit* case, there was "a clearly established right against false imprisonment without due process." *Id.*[7] Indeed, the court in *Cannon* reversed the district court's decision that the defendant was protected by qualified immunity, finding that since the *Douthit v. Jones* decision in 1980, the right has been clearly established.

Although no cases have been found within the Eleventh Circuit, there is caselaw from other circuits finding that imprisonment beyond the expiration of prisoner's sentence violates "the eighth amendment's proscription against cruel and unusual punishment." *Moore v. Tartler,* 986 F.2d 682, 686 (3d Cir.1993), *citing Sample v. Diecks,* 885 F.2d 1099 (3d Cir.1989); *see also Campbell v. Peters,* 256 F.3d 695, 700 (7th Cir.2001)(granting qualified immunity on claim of former prison inmate that he was detained beyond his prison release date in violation of the Eighth Amendment); *Haygood v. Younger,* 769 F.2d 1350 (9th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986)(holding prison officials ultimately violated the plaintiff's right to be free from cruel and unusual punishment); *Mitchell v. New Mexico Dept. of Corrections,* 996 F.2d 311, 1993 WL 191810 (10th Cir.1993)(Table); *Douglas v. Murphy,* 6 F.Supp.2d 430, 431 (E.D.Pa.1998)(finding an Eighth Amendment violation for detain-

---

**4.** "The elements of a common law false imprisonment cause of action are (1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm.' " *Douthit,* 619 F.2d at 532 (other citations committed).

**5.** *Jordan v. Doe,* 38 F.3d 1559, 1564–1565 (11th Cir.1994), *citing, Hamm v. DeKalb County,* 774 F.2d 1567 (11th Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

**6.** The *Cannon* decision also stands for the proposition that prison officials have an obli-

gation to make a reasonable investigation of claims of illegal detention. *See also Alexander v. Perrill,* 916 F.2d 1392, 1398, n. 11 (9th Cir.1990) (considering claim that prison officials had duty to investigate inmate's claim that he should have been released as a due process claim).

**7.** *Douthit* found there was a due process violation when the prisoner was detained 30 days beyond the expiration of his sentence. 619 F.2d at 532.

ing a prisoner beyond the termination of his sentence where a prison official had knowledge of the prisoner's problem, the official failed to act "indicating that his/her response to the problem was a product of deliberate indifference to the prisoner's plight" and "there exists a causal connection between the official's response to the problem and the unjustified detention."); *Campbell v. Illinois Dept. of Corrections,* 907 F.Supp. 1173, 1179–80 (N.D.Ill.1995). *But see Jones v. City of Jackson,* 203 F.3d 875, 880–881 (5th Cir.2000) (denying existence of a § 1983 cause of action under the Eighth Amendment for continued detention or incarceration beyond expiration of sentence, but finding there was a cause of action under Fourteenth Amendment's Due Process Clause).

 In light of these cases, it is unclear whether due process or the Eighth Amendment is implicated by Plaintiff's complaint, or both. Since both claims require a finding of subjective culpability, however, and that standard (deliberate indifference) is the same, it makes no difference.

The deciding issue in this case on summary judgment is whether the amended information was in fact attached to the informal grievance and formal grievance submitted by Plaintiff to Defendants Bass and Franklin. That is the only document which clearly showed that Count VII had a commencement date earlier than January 1, 1994.

Plaintiff has presented sworn evidence that he and inmate Wilson made copies of the amended information, attached it to the informal grievance, and sent the grievance to Defendant Bass. There is evidence to the contrary. Defendant Bass contends that no attachments were presented with Plaintiff's informal grievance to her. This creates a genuine dispute of fact.

The fact in dispute is material. If the amended information *was* attached to the initial grievance, the amended information would have clearly informed Defendant Bass that the offense conduct in Count VII commenced before January 1, 1994. If a jury found that the amended information was attached to this initial grievance, it also might find that Defendant Bass was deliberately indifferent to Plaintiff's right to be released. This would be one of several possible reasonable conclusions since Plaintiff had claimed that all of his offenses were committed prior to January 1, 1994, and provided significant proof to back up that claim. This is not a case where the statute governing the award of gaintime was ambiguous. Both sides agree that if the offense conduct underlying Count VII commenced before January 1, 1994, Plaintiff was entitled to earn gaintime as to that prison sentence. Indeed, that is why he was released so quickly when the true facts were discovered.[8] Of course, a jury might also conclude that Defendant Bass was merely negligent, in which case the claim would fail, but that is

---

8. *Whirl v. Kern, supra,* is instructive with regard to the responsibility of a "jailer" with respect to calculation of release dates. In that case, the plaintiff brought a state law claim for false imprisonment and a civil rights claim under § 1983. 407 F.2d at 785. The Fifth Circuit observed:

> The responsibility for a failure of communication between the courts and the jailhouse cannot justifiably be placed on the head of

a man immured in a lockup when the action of the court has become a matter of public record. Ignorance and alibis by a jailer should not vitiate the rights of a man entitled to his freedom. A jailer, unlike a policeman, acts at his leisure. He is not subject to the stresses and split second decisions of an arresting officer, and his acts in discharging a prisoner are purely ministerial. Moreover, unlike his prisoner, the jailer

not the only reasonable conclusion which a jury might make. Since there is a genuine dispute of material fact, and since viewed in a light most favorable to Plaintiff it is reasonably possible for a jury to return a verdict in his favor, summary judgment in favor of Defendant Bass should be denied.

The question of summary judgment in favor of Defendant Franklin is more problematic. Defendant Franklin, Assistant Warden for Operations, had no training in the calculation of release dates, and normally a grievance of this sort would have been considered by the Assistant Warden for Programs. Franklin candidly states in his affidavit that he signed the response, prepared by the Classification Department, simply because it "appeared to be a reasoned response." But the response was very straightforward and the underlying logic not difficult to understand. It simply said that one of the offenses had a date of March 29, 1994, and was controlling. The response also implied that a different result would occur if the offense occurred before January 1, 1994. *If* the amended information was in fact attached to this formal grievance, even Defendant Franklin, who had no background in sentence calculation, should reasonably have seen that the response was wrong. A jury might, therefore, reasonably conclude that Franklin saw the amended information but ignored it, and thus was deliberately indifferent to the correct result and find for Plaintiff. Summary judgment in his favor is precluded due to a genuine dispute of material fact.

The claim for damages is a narrow one, however. Plaintiff has not presented any evidence to show deliberate indifference by either Bass or Franklin before March 12, 2000, the date he submitted his initial grievance to Bass. Indeed, there is no evidence at all to suggest that either Defendant should have investigated the status of Plaintiff's gaintime prior to that date. The period of potential liability, therefore, is only from March 12, 2000, until the date of his release, on April 19, 2000, and for Franklin, the period commences later, the date he responded to the formal grievance.

## C. Qualified Immunity

Defendants have asserted qualified immunity as a defense to an award of damages in their individual capacities. Without reference to any of the cases which concern a claim that a prisoner was held beyond the term of his sentence, Defendants make the following conclusory argument:

> Defendants were, at the time applicable to the complaint, employees of the Florida Department of Corrections, and as such, were government officials. Accordingly, Defendants are entitled to qualified immunity as the alleged misconduct did not violate Plaintiff's *clearly established* statutory rights, and Plaintiff's Complaint should thus be dismissed.

Doc. 16, p. 9.

This is an affirmative defense. Defendants have the burden of showing entitle-

---

has the means, the freedom, and the duty to make necessary inquiries. While not a surety for the legal correctness of a prisoner's commitment, *Ravenscroft v. Casey*, 2 Cir.1944, 139 F.2d 776, *cert. denied*, 323 U.S. 745, 65 S.Ct. 63, 89 L.Ed. 596; *DeWitt v. Thompson*, 1942, 192 Miss. 615, 7 So.2d 529, he is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release.
407 F.2d at 792.

ment to it. All too often in these cases Defendants interpose the defense without doing the heavy lifting, without setting forth a survey of the law as it existed shortly before the events in question. Boiler-plate motions waste time and resources. To discourage this practice, it is recommended that the court summarily find that the defense has been insufficiently pleaded to be considered.

If this recommendation is not thought to be suitable, then it is observed that the defense which has been interposed is frivolous in this case. Qualified immunity protects a government official who was performing discretionary functions from an award of civil damages in a § 1983 action unless he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The first step is to "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999), *citing Siegert v. Gilley,* 500 U.S. 226, 232–233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and *County of Sacramento v. Lewis,* 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Qualified immunity does not require that there be materially similar cases, only that the unlawfulness of an act or omission be apparent in light of pre-existing law. *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002), *reversing Hope v. Pelzer,* 240 F.3d 975 (11th Cir.2001). Accordingly, the question to ask is whether prison officials have been given fair warning that their actions or omissions are unconstitutional. *Id.*

It has been clearly established in this Circuit for a long time that an inmate may not be held in prison beyond the end of his sentence. *Whirl v. Kern,* 407 F.2d 781 (5th Cir.1968), *cert. denied* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969)(upholding liability under § 1983 against a jailer for continuing a prisoner's incarceration for nine months); *Cannon v. Macon County,* 1 F.3d 1558, 1563 (11th Cir.1993) (denying qualified immunity defense and finding there was a clearly established right under the Fourteenth Amendment to not be falsely imprisoned); *Douthit v. Jones,* 619 F.2d 527 (5th Cir.1980) (holding thirty day detention beyond the expiration of a sentence "constitutes a deprivation of due process."). These case clearly establish an inmate's right to be released when he has served his period of incarceration. Indeed, in 1993 the Eleventh Circuit reversed the granting of a qualified immunity defense in *Cannon* and found the law to have been clearly established by 1980 based on *Douthit. Cannon,* 1 F.3d at 1564–65. These cases also clearly established that a prison official must not be deliberately indifferent to a claim of unlawful imprisonment when the prisoner presents information which reasonably raises the issue. While there is a genuine dispute about whether a reasonable investigation was undertaken by Defendants Franklin and Bass, there can be no dispute that Plaintiff's rights were clearly established. There also can be no dispute that if Defendants Franklin and Bass were deliberately indifferent to Plaintiff's clearly established rights, liability would ensue. The defense of qualified immunity is not available.

**D. Eleventh Amendment immunity**

Defendants have also raised the Eleventh Amendment as a defense to

this action. The law is well settled that, absent several limited exceptions, the Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 145–46, 113 S.Ct. 684, 688–89, 121 L.Ed.2d 605 (1993); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996); *Carr v. City of Florence,* 916 F.2d 1521, 1524 (11th Cir.1990).

 In enacting § 1983, Congress did not abrogate a state's immunity, *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), nor has Florida waived its Eleventh Amendment sovereign immunity and consented to suit in federal court under § 1983. *Gamble v. Florida Dept. of Health and Rehab. Servs.,* 779 F.2d 1509, 1520 (11th Cir.1986). As Plaintiff has sought only monetary damages in this case, the *Ex Parte Young* doctrine is inapplicable and summary judgment should be granted in favor of Defendants to the degree that claims are made against them in their official capacities. All remaining claims should proceed against Defendants Franklin and Bass solely in their individual capacities.

### E. Entitlement to damages

 Defendants' final argument is that Plaintiff has not shown proof of "actual constitutional injury" and is not entitled to monetary damages. In *Cannon,* the plaintiff successfully litigated her § 1983 claim that she was falsely imprisoned for seven days and was awarded a jury verdict of $50,000.00. Defendants' motion for summary judgment on this basis should be denied.

## V. Conclusion

Accordingly, it is **RECOMMENDED** that Defendants' summary judgment motion, doc. 13, be **GRANTED in part,** that summary judgment be **GRANTED** in favor of Defendant Moore on all claims, in favor of Defendant Franklin as to the failure to train and supervise claim, any damage claim in his official capacity, and any damage claim in his individual capacity arising prior to March 29, 2000, in favor of Defendant Bass as to any damage claim in her individual capacity arising prior to March 12, 2000, and that in all other respects, the summary judgment motion be **DENIED** and the case be **REMANDED** for further proceedings.

Oct. 25, 2002.